850 So.2d 1136 (2002)
Marcus DAVIS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-02000-COA.
Court of Appeals of Mississippi.
May 14, 2002.
Rehearing Denied September 3, 2002.
Certiorari Denied February 6, 2003.
*1138 Stephen Nick, Jackson, attorney for appellant.
Office of the Attorney General By Charles W. Maris Jr., attorney for appellee.
BEFORE KING, P.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. On May 6, 1999, Marcus Davis was indicted for one count of armed robbery and one count of aggravated assault. He was tried on the crimes charged in the Circuit Court of Washington County, Mississippi on May 18, 2000. A mistrial resulted because the jury was unable to reach a verdict. Davis was again tried on September 14, 2000. He was found guilty of both charges and sentenced to serve forty years on count one and twenty years on count two, to run consecutively. Feeling aggrieved by the convictions against him, Marcus filed this appeal and alleges six assignments of error.
¶ 2. First, Davis argues that the trial court erred in ordering that David Wilson conduct his psychological evaluation, rather than a staff member of the Forensic Services Division at the Mississippi State Hospital at Whitfield. Next, he argues that the trial court erred in denying his request to read the statement of Nick Crechale, one of the victims, for purposes of refreshing Mr. Crechale's memory. Davis further argues that the trial court erred when it denied his request to admit into evidence the statements of witnesses Terri Nelson and John Berry. Next, he alleges that the trial court erred when it denied his request to admit into evidence the statements of witnesses George Ford and Toni McCollum. Davis also argues that the trial court erred in the manner in which the jury was instructed on the law. Finally, Davis maintains that the trial court erred when it denied his motion for a new trial or in the alternative for judgment notwithstanding the verdict.
¶ 3. Finding no error, we affirm.

FACTS
¶ 4. On the evening of May 6, 1999, Davis, wearing a mask and a Dallas Cowboys Starter jacket entered Nick's Bar-B-Que in Greenville, Mississippi. He walked up to the counter, aimed a handgun at the employee working there and demanded the money in the cash register. The employee, Nelson, told Davis that she was unfamiliar with the register and could not open it. Davis then fired the gun one time. Nelson called for Nick Crechale, owner of the restaurant. Crechale came out of the kitchen with a meat cleaver. Davis tried to go behind the counter but Crechale came at him and hit him on the arm with the cleaver. In response, Davis shot Crechale in the head and then fled the restaurant. Davis abandoned the mask and jacket in a nearby field. Subsequently, Nelson identified Davis as the man who tried to rob the restaurant and shot Crechale. The police arrested Davis and he gave a complete statement admitting the commission of the crimes.

LAW AND ANALYSIS
I. DID THE TRIAL COURT ERR IN ORDERING DAVID WILSON TO PERFORM DAVIS'S PSYCHOLOGICAL EVALUATION RATHER THAN A STAFF MEMBER AT WHITFIELD?
*1139 ¶ 5. Davis argues on appeal that the trial court erred when it ordered that David Wilson would perform the mental evaluation he requested, rather than a member of the Forensic Services Division at the Mississippi State Hospital at Whitfield. He maintains that Wilson is not a psychiatrist or psychologist as required by statute and therefore not competent to perform the evaluation. Davis further argues that Wilson's evaluation was incomplete because it did not specifically consider whether Davis gave a false confession to the police.
¶ 6. This assignment of error must fail for two reasons. First, Davis is procedurally barred from making this argument because he failed to object at the trial level. If a defendant fails to make a contemporaneous objection at the trial level, he is barred from raising the issue on appeal. Berry v. State, 575 So.2d 1, 9 (Miss.1990).
¶ 7. Notwithstanding the procedural bar, Davis's argument fails for a second reason. The Mississippi Supreme Court has held that a defendant does not have the right to the psychologist of his choice. Davis v. State, 374 So.2d 1293, 1298 (Miss. 1979) (citing King v. State, 210 So.2d 887, 889 (Miss.1968)). If the court finds that a mental evaluation should be performed, the court has the right to select the expert upon whom it will depend. Id.
¶ 8. At both trials, Davis called Wilson to testify on his behalf. When asked about his qualifications by defense counsel, Wilson stated that he was a licensed counselor and psychologist. Defense counsel asked that Wilson be qualified as an expert by the court and the court agreed. Davis did not question Wilson's qualifications until after he was convicted during the second trial.
¶ 9. One further issue should be discussed in denying this assignment of error. Davis argues that the report submitted by Wilson was incomplete because it did not include his opinion concerning the veracity of Davis's statement to the police. Davis asserts that because Wilson failed to address this issue in his report, his ability to present a complete defense was hindered. We disagree. This type of opinion testimony as to truthfulness has been deemed "dubious at best." Williams v. State, 539 So.2d 1049, 1051 (Miss.1989). See also Griffith v. State, 584 So.2d 383, 386-87 (Miss.1991) (cautioning the court against allowing direct comments as to a witness's veracity).
II. DID THE TRIAL COURT ERR WHEN IT REFUSED TO ALLOW DEFENSE COUNSEL TO READ CRECHALE'S STATEMENT AT TRIAL FOR PURPOSES OF REFRESHING CRECHALE'S RECOLLECTION?
¶ 10. Davis claims on appeal that the trial court erred when it refused to allow him to read into evidence the prior statement given by Crechale to the Greenville police. Davis argues that he should have been allowed to read the statement to Crechale for purposes of refreshing his recollection because Crechale's testimony was vague. Defense counsel asked to read the statement to Crechale because Crechale stated that he was illiterate and could not read the statement.
¶ 11. Mississippi Rules of Evidence 803(5) reads as follows:
Recorded Recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter *1140 was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.
M.R.E. 803(5) (emphasis added). In this case, Davis has failed to demonstrate that Crechale's recollection was insufficient to allow him to testify fully and accurately. At trial, the court, in refusing defense counsel's request, stated that there was "no reason for putting the statement in or reading it to him because he hasn't testified he hasn't stated a loss of memory, and he hasn't made any statement that was contrary to anything in that statement...." After a careful review of the trial transcript and Crechale's statement, it is clear that Crechale answered defense counsel's questions consistently with his prior statement and did not profess to have trouble remembering the events of the robbery and shooting and subsequent investigation. The trial court properly denied this request.
III. DID THE TRIAL COURT ERR IN REFUSING TO ALLOW DAVIS TO INTRODUCE INTO EVIDENCE THE STATEMENTS OF TERRI NELSON AND JOHN BERRY?
¶ 12. Davis argues that the trial court erred in refusing to allow him to introduce the statements of Nelson and Berry. He alleges that both statements were inconsistent with the testimony given at trial and should have been admitted for credibility purposes.
¶ 13. Berry testified that he and his daughter had stopped at Nick's Bar-B-Que to pick up supper on the evening in question. While there, he saw Davis enter the restaurant, go to the restroom and then leave in a suspicious manner. He noticed Davis carrying a light and dark colored athletic coat under one arm. Berry stated that Davis walked out right behind him and his daughter. Berry stated that Davis was very close to them and that he looked Davis directly in the face for five to ten seconds. When his wife later informed him of what had happened at Nick's, Berry called the police.
¶ 14. On cross-examination, Davis elicited the fact that Berry's statement to the police did not contain any reference to the athletic coat. He admitted that he only remembered that fact later. Berry emphatically denied that he had gained knowledge of the coat from a news report.
¶ 15. Nelson also testified to the events that occurred on the night of May 6, 1999. Nelson was working at Nick's when Davis attempted to rob the restaurant and shot Crechale. Nelson admitted on direct examination by the State that in her initial statement to the police she did not identify Davis as the culprit. She testified that she was not sure at first if Davis was the one responsible. However, upon further contemplation, Nelson gave a second statement to the police in which she stated that she had known Davis for a couple of years and was sure by recognition of his voice, that he was the man who tried to rob Nick's.
¶ 16. Davis argues that because Berry's testimony at trial included facts not in his statement to the police and because of the inconsistent nature of Nelson's two statements, the trial court should have admitted the statements for credibility purposes. He is incorrect.
¶ 17. The credibility of witnesses and the weight and value of their testimony are to be determined by the jury. Burrell v. State, 613 So.2d 1186, 1192 (Miss.1993). Further, as the State notes, when a witness admits making a prior out-of-court inconsistent statement, *1141 which has been reduced to writing, the statement should not be introduced into evidence. Brown v. State, 682 So.2d 340, 345 (Miss.1996) (citing Moffett v. State, 456 So.2d 714, 719 (Miss.1984)).
IV. DID THE TRIAL COURT ERR IN REFUSING TO ALLOW DAVIS TO INTRODUCE INTO EVIDENCE THE STATEMENTS OF GEORGE FORD AND TONI MCCOLLUM?
¶ 18. Davis argues that the statements of Ford and McCollum should have been admitted into evidence as excited utterances, thus qualifying as exceptions to the hearsay rule. He argues that the statements given by these two witnesses to the crime were in direct conflict to testimony of other witnesses and should have been admitted for credibility purposes.
¶ 19. Ford was a customer of the restaurant and was present during the incident in question. McCollum was an employee of the restaurant and was also present during the incident. Both Ford and McCollum made statements to the police in which they recorded their recollection of the attempted robbery and shooting.
¶ 20. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition." M.R.E. 803(2). The reliability of an excited utterance is based on the premise that circumstances may place the declarant in such an excited state as to temporarily impede the capacity for reflection. Owens v. State, 716 So.2d 534, 535-36 (Miss.1998) (quoting Clark v. State, 693 So.2d 927, 932 (Miss. 1997)). There is no hard and fast rule regarding the interval of time that passes between an event and an utterance before the remark necessarily must be classified as outside the excited utterance exception to the hearsay rule. Baine v. State, 606 So.2d 1076, 1079 (Miss.1992). That is a question to be resolved by the trial court in its sound discretion. Davis v. State, 611 So.2d 906, 914 (Miss.1992).
¶ 21. Davis maintains that because these statements were made after witnessing an attempted robbery and shooting, they automatically qualify as an excited utterance. Davis argues that the statements were taken a short time after the incident occurred; however, he does not provide the Court with any specific details. As stated above, admission of a statement is well within the discretion of the trial court. Davis, 611 So.2d at 914. Davis has failed to demonstrate that the trial court abused its discretion in refusing to allow these statements.
¶ 22. It should also be noted that Davis argues that he should have been allowed to introduce these statements to contradict the testimony of Nelson. Nelson testified that she saw the would-be-robber's hands; however, Ford and McCollum testified that the perpetrator was wearing gloves. These inconsistencies were brought out in testimony at trial. Davis cross-examined all three of these witnesses concerning the matter. Also, Officer Daniel Frank, with the Greenville Police Department, testified that the statements by Ford and McCollum indicated that the robber was wearing gloves at the time of the robbery; therefore, the jury had the benefit of these facts and Davis was not prevented from using this information to question Nelson's credibility.
V. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY?
¶ 23. Davis objects to two jury instructions that were given by the trial court. First, he argues that the trial court erred in instructing the jury that it was not to draw any unfavorable inferences from *1142 Davis's "failure to testify." It is the inclusion of the word failure that Davis objects to as error.
¶ 24. This objection must fail for two reasons. First, Davis is procedurally barred from bringing this issue on appeal because he did not object to the instruction at trial. When presented with the instruction, Davis announced, "No objection from the defense." Where a defendant fails to contemporaneously object to an instruction at trial, he is procedurally barred from raising the issue on appeal. Jackson v. State, 684 So.2d 1213, 1229 (Miss.1996). Further, the language of this instruction is typical in a case in which the defendant does not take the stand. White v. State, 532 So.2d 1207, 1225 (Miss.1988).
¶ 25. Davis next objects to the deletion of certain language from jury instruction D-10. The instruction referred to, including the exempted language, reads as follows:
The court instructs the jury if, from the evidence, you have a reasonable doubt as to the identity of the person who committed the crime or crimes testified about, then you must find the defendant not guilty. If, after carefully considering all the evidence, you are not convinced beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence, that it was Marcus Davis who committed the crimes or crimes testified about herein, then you must find him not guilty.
Jury Instruction D-10 (underlined material deleted from instruction given).
¶ 26. Again, because Davis failed to object to the amendment of the instruction at trial, he is barred from doing so on appeal. Jackson, 684 So.2d at 1229. In Young v. State, 420 So.2d 1055, 1057-58 (Miss.1982), the Mississippi Supreme Court stated, "the acceptance of an instruction after its amendment by the trial court amounts to a waiver of an objection to the amendment."
¶ 27. Further, the language which was removed from the instruction is only appropriate where a circumstantial evidence instruction is appropriate. This type of "circumstantial" instruction is required in cases where the evidence presented is purely circumstantial. Petti v. State, 666 So.2d 754, 757 (Miss.1995). This is not true in the case sub judice. As noted in Gray v. State, 728 So.2d 36 (¶ 214) (Miss.1998), when a defendant confesses to the crimes charged, the confession serves to remove the case from the circumstantial evidence realm.
VI. DID THE TRIAL COURT ERR IN FAILING TO GRANT DAVIS'S MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE FOR JUDGMENT NOTWITHSTANDING THE VERDICT?
¶ 28. Davis argues on appeal that the trial court should have granted his post-trial motion. This motion challenges the weight and sufficiency of the evidence presented at trial.
¶ 29. A motion for a new trial is used to challenge the weight of the evidence. McClain v. State, 625 So.2d 774, 781 (Miss.1993). The decision to grant a new trial rests in the sole discretion of the trial court. Id. Such a motion should only be granted when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Wetz v. State, 503 So.2d 803, 812 (Miss.1987). This Court, on appeal, will reverse and order a new trial only upon a determination that the trial court abused its discretion, accepting as true all evidence favorable *1143 to the State. McClain, 625 So.2d at 781.
¶ 30. Upon consideration of the above cited case law, this Court can find no basis for granting Davis's request for a new trial. In support of this argument, Davis refers to the previously discussed issues. As each of these issues have been found to be without merit, they have no influence here. The State produced several witnesses to the incident and the confession of Davis himself, this evidence is sufficient for this Court to determine that the verdict was not so contrary to the weight of the evidence that a new trial must be granted.
¶ 31. Whether the evidence is legally sufficient is an argument that is raised by a motion for a directed verdict or a JNOV. McClain, 625 So.2d at 781. In deciding whether the prosecution has presented sufficient evidence to sustain the verdict, the court should accept as true all credible evidence consistent with the defendant's guilt and the State must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. A reviewing court should only reverse where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fairminded jurors could only find the accused not guilty. Wetz, 503 So.2d at 812.
¶ 32. The result is the same upon consideration of Davis's contention that the trial court should have granted his motion for judgment notwithstanding the verdict. As stated before, after a valid waiver of his Miranda rights, Davis gave a written confession to the crimes charged. Eyewitnesses testified as to the events of the night in question. The evidence presented at trial was legally sufficient for impartial and fair-minded jurors to find as this jury did.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF COUNT I, ARMED ROBBERY AND SENTENCE OF FORTY YEARS; COUNT II, AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS TO RUN CONSECUTIVELY TO COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED TO WASHINGTON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.