KING, C.J.,
for the Court.
¶ 1. This appeal concerns three consolidated cases involving two convictions in the Circuit Court of Lincoln County, Mississippi, of William Erin “Bill” Cannon for the possession and intent to sell methamphetamine and the related forfeiture of real and personal property. Aggrieved, *737 Cannon raises the following twenty-one- issues on appeal:
I. CANNON’S CONVICTIONS IN 01-149 AND 01-150 MUST BE REVERSED BECAUSE THE PROSECUTION INTRODUCED EVIDENCE OF CANNON’S ALLEGED CONFESSIONS IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS AND HIS CORRESPONDING RIGHTS UNDER THE STATE CONSTITUTION.
II. CANNON’S CONVICTION IN 01-149 MUST BE REVERSED BECAUSE OF THE CONFLICT OF INTEREST OF HIS ATTORNEY.
III. CANNON’S CONVICTION IN 01-150 MUST BE REVERSED BECAUSE OF THE ERRONEOUS ADMISSION OF EVIDENCE OF OTHER OFFENSES.
IV. CANNON’S CONVICTION IN 01-150 MUST BE REVERSED BECAUSE OF THE ERRONEOUS ADMISSION OF EVIDENCE OF OTHER OFFENSES.
V. CANNON’S CONVICTIONS IN BOTH CASES AND THE JUDGMENT IN THE FORFEITURE PROCEEDING MUST BE REVERSED BECAUSE THE STATE FAILED TO REVEAL THE COMPLETE DEAL JOSEPH BURNS HAD FOR TESTIFYING AGAINST CANNON, .
VI. THE COURT SHOULD GRANT NEW TRIALS IN ALL THREE CASES BECAUSE THE PROSECUTION KNOWINGLY RELIED ON FALSE EVIDENCE IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.
VII. THE COURT SHOULD REVERSE THE CONVICTIONS AND SENTENCES OF CANNON BECAUSE THE TRIAL JUDGE REVEALED THAT HE HAD RECEIVED EX PARTE COMMUNICATIONS REGARDING CANNON’S CASES.
VIII. THIS COURT SHOULD REVERSE CAUSE NO. 01-150 BECAUSE CRAIG OSTER WAS ERRONEOUSLY PERMITTED TO TESTIFY AS AN EXPERT ON THE ISSUE OF CANNON’S INTENT TO SELL DRUGS.
IX. THIS COURT SHOULD REVERSE BECAUSE - OF THE USE OF IMPERMISSIBLE EXPERT TESTIMONY IN CAUSE NO. 01-149 AND 01-150.
X.IT WAS REVERSIBLE ERROR TO ALLOW HEARSAY EVIDENCE IN CAUSE NO. 01-150 AS TO WHAT OTHER PEOPLE HAD TOLD BEARFIELD IN ORDER FOR HIM TO OBTAIN THE MARCH 3RD WARRANT.
XI. THIS COURT SHOULD REMAND CASE 01-149 FOR AMENDMENT OF THE SENTENCING ORDER.
XII. THIS COURT SHOULD REVERSE CASES 01-149 AND 01-150 FOR RESENTENCING BECAUSE THE TRIAL COURT FAILED TO MAKE FINDINGS REGARDING CANNON’S LIFE EXPECTANCY BEFORE SENTENCING HIM TO THIRTY YEARS.
XIII. THIS COURT SHOULD REVERSE THE SENTENCES IN CASE 01-150 BECAUSE THE TRIAL COURT OVER CANNON’S OBJECTION AL *738 LOWED THE PROSECUTION TO AMEND CANNON’S INDICTMENT TO CHARGE HIM AS AN HABITUAL OFFENDER.
XIV. THE COURT SHOULD REVERSE THE SENTENCE IN CAUSE NO. 01-150 BECAUSE THE TRIAL JUDGE ERRONEOUSLY DOUBLED CANNON’S SENTENCE PURSUANT TO § 41-29-147.
XV. CANNON RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL AND HIS DUE PROCESS RIGHT TO A FAIR TRIAL AND CORRESPONDING SECTIONS OF THE MISSISSIPPI CONSTITUTION.
XVI. THIS COURT MUST REVERSE THE FORFEITURE BECAUSE THE FORFEITURE PETITION FAILS TO STATE A CAUSE OF ACTION FOR FORFEITURE OF THE REAL PROPERTY.
XVII. THIS COURT MUST REVERSE THE FORFEITURE OF THE LAND BECAUSE THE STATE FAILED TO SERVE ALL OF THE NECESSARY PARTIES TO ITS FORFEITURE.
XVIII. THIS COURT MUST REVERSE THE FORFEITURE PROCEEDINGS BECAUSE THE TRIAL JUDGE ERRONEOUSLY CONCLUDED THAT THE APPELLANTS COULD NOT RELITIGATE THE SUPPRESSION ISSUES AT THE FORFEITURE PROCEEDINGS.
XIX. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING EVIDENCE . THAT CANNON HAD CON- . FESSED TO DEPUTY PICOU AND TOLD HIM THAT HE HAD USED THE MOTORCYCLE TO PURCHASE METHAMPHETAMINE IN TEXAS.
XX. THE FORFEITURES SHOULD BE REVERSED BECAUSE THE EVIDENCE IS INSUFFICIENT TO SUPPORT FORFEITURE OF THE PROPERTY.
XXI. THE TRIAL COURT ERRED IN HOLDING THAT FORFEITURE OF ALL OF THE LAND WAS PROPORTIONATE TO CANNON’S DRUG USE.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. The first case, labeled as Cause No. 01-149, involves a conviction for possession of methamphetamine. On March 26, 2001, Officer Clint Earls of the Brookhaven Police Department responded to a call that a vehicle was stopped in the street and blocking traffic. After arriving at the location and approaching the vehicle, the driver of the car sped away. Earls stopped the car in a nearby parking lot, recognized the driver as William “Bill” Cannon, a man whom the sheriffs department was currently investigating, and called for backup. K-9 Deputy Captain Chris Picou arrived on the scene soon afterwards, and, finding Cannon incoherent, detained him and searched his car. Picou soon found a syringe in the car, and, upon further inspection, noticed a canister with camouflage tape wrapped around it lying next to the curb. The canister contained several baggies containing a white powder that was later identified as methamphetamine. *739 Cannon was not arrested at that time, and he apparently talked to Officer Picou during the week about becoming an ■ informant. During his conversations with Pi-cou, Cannon admitted that the canister was his. Cannon and his lawyer then met with Picou in Jackson and discussed the possibility of a plea arrangement. At this meeting, Cannon again.admitted that the canister of drugs was his. Cannon was subsequently indicted on possession charges. On October 15, 2001, .Cannon was found guilty of unlawful possession of at least two grams but less than ten grams of methamphetamine with intent to distribute and sentenced to thirty years in custody of the Mississippi Department of Corrections and ordered to pay a one million dollar fine.
¶4. The second case, labeled as Cause No. 01-150, involves a controlled methamphetamine buy at Bill Cannon’s residence. On May 25, 2001, Joseph “Jody” Burns cooperated with four agents of the Mississippi Bureau of Narcotics to buy methamphetamine from Cannon at his residence at 434 Greenwood Lane in Brookhaven, Mississippi. Burns was given $500 to buy the substance and was wired so that the agents, who were positioned several hundred yards away, could hear the transaction. Upon completion of the transaction, the agents converged upon Cannon, who attempted to flee from his residence. The agents detained Burns, Cannon, and a third individual on the property named Becky Butler while securing a search warrant. Upon searching the residence, agents found a small amount of methamphetamine in the shop area, which constituted much of the bottom floor of Cannon’s residence. Upon searching the area around his residence, agents found a camouflaged container that included baggies containing approximately 119 grams of methamphetamine. In the ensuing trial, Cannon was found guilty of unlawful delivery of methamphetamine and unlawful possession of more than thirty grams of methamphetamine with intent to distribute. The court allowed the amendment of the original indictment under UCCCR Rule 7.09 to charge Cannon as an habitual offender under Mississippi Code Annotated § 99-19-81 (Rev.2000). The trial court, under Mississippi Code Annotated § 41-29 — 139(B)(1), also doubled the sentence due to multiple previous offenses and thus sentenced Cannon to thirty years on each count, doubled to sixty years, for a total of one hundred and twenty years of confinement without the possibility of parole and an additional fine of $2,000,000, the maximum under the statute.
¶ 5. The third case, Cause No.2001-272, involves the forfeiture of real property, a motorcycle, and cash that was seized in the May 25, 2001 drug sting at Bill Cannon’s residence. This action actually constitutes the second forfeiture proceeding on the property in question, which consisted of about 62.08 acres of land and various buildings or trailers that constituted Cannon’s residence. It is helpful to know the background of the first proceeding and the events leading up to the second and subject proceeding.
¶ 6. The State produced evidence that drug activity had occurred on the property in 1991, and during that time Bill Cannon, who owned the property, was serving a five year sentence in Texas for an attempted murder conviction. The State initiated a petition for forfeiture against the real property in 1992, but agreed to withdraw the petition if Cannon agreed to place the property into an irrevocable trust for the benefit of his two daughters, Carla Wallace and Kristin Cannon. Bill Cannon executed a trust agreement on May 22,1992, and named his father, F.H. Cannon Jr., and his mother, Dott Cannon, as trustees.
*740 ¶ 7. In 1996, Cannon was released from his Texas incarceration and moved back onto the subject property some time in 1998. Cannon soon erected a shop on the property, part of which appears to have served as his residence. Additionally, there is evidence that Cannon filed for homestead exemption, paid taxes, and paid for garbage collection and other utilities while living on the land for the three years prior to his 2001 arrests. Soon after the March 2001 arrest (Cause No. 01-149), Officer Chris Picou testified that he informed Cannon’s two daughters that if their father resumed his drug activity on the property after his release on bond, the property would be subject to forfeiture. Subsequently, on May 25, 2001, while out on bond, Cannon was arrested on his property while in the act of selling methamphetamine (Cause No. 01-150). Pursuant to Mississippi Code Annotated § 41-29-153(a) (1972), on June 22, 2001, the State filed a petition for forfeiture of the real property that included 62.08 acres, a 1997 Honda Shadow motorcycle, and $2,000 in cash that was found on the property. After a hearing, the trial judge, sitting as the trier of fact, found that the realty was used to facilitate Cannon’s methamphetamine sales, the motorcycle was used to transport the methamphetamine, and the $2,000 in currency was the product or instrumentality used to violate Mississippi’s controlled substance laws and ordered the forfeiture of the real property, the motorcycle, and the currency.
ANALYSIS
¶ 8. For simplicity, the three cases will be referred to by their trial cause numbers as 01-149 (the conviction arising from the March 26, 2001 traffic stop), 01-150 (the conviction arising from the May 25, 2001 drug sting), and 01-272 (the forfeiture case).
I. Evidentiary Issues
¶ 9. Cannon raises a number of eviden-tiary questions in issues I-IV, and VIII -X. We examine these issues together. Cannon alleges that his confessions in 01-149 and 01-150 were improperly introduced into evidence. He alleges that the trial court erroneously admitted evidence of other offenses. Cannon also alleges that the trial court erred in allowing Craig Oster and Dustin Bearfield to testify as experts as to Cannon’s intent to distribute methamphetamine.
STANDARD OF REVIEW
¶ 10. The admissibility of evidence rests within the discretion of the trial court. Jones v. State, 856 So.2d 389, 393(¶ 7) (Miss.Ct.App.2003). This Court must also determine whether the proper legal standards were applied by the trial court, and if the trial court has erred in its application of the proper legal standards in its fact findings, this Court will apply a substantially broader standard of review. Id. However, the evidentiary ruling must have resulted in a denial of a substantial right of the defendant. Id. A reversal will be appropriate only if there was an abuse of discretion that resulted in prejudice to the accused. Id. (citing Hayes v. State, 803 So.2d 473(¶ 4) (Miss.Ct.App.2001)).
¶ 11. Cannon claims that his admissions of guilt should not have been allowed because they were made as part of plea discussions. The record of the suppression hearing indicates that there was some discussion with Cannon about serving as an informant. There appear to have been several discussions of this matter. What is not clear in the record is whether the discussions were at the behest of Cannon or the State. If they were at the behest of the State, then it would appear that there was at least some inference of a promise, thereby making the confessions involun *741 tary. Rollins v. State, 300 So.2d 145, 146 (Miss.1974). The trial judge sits as the trier of fact, and judges credibility and weight. In this instance, the trial court resolved those questions in favor of the State. Unless those findings are unsupported by substantial evidence, this Court will not reverse them. Veal v. State, 585 So.2d 693, 697. (Miss.1991). Cannon has failed to show this Court that the trial court’s findings are not supported by substantial evidence.
¶ 12. Cannon failed to object to the admission of some of the evidence offered by the State. He will not be heard to object to that evidence for the first time on appeal. Mississippi Code Annotated § 99-39-21(1) (Rev.2000), Davis v. State, 850 So.2d 1136(¶ 6) (Miss.Ct.App.2002). As to any matters to which he did object, Cannon has failed to show an abuse of discretion by the trial court. The record reflects that the trial court gave due consideration to the evidence. It made an on-the-record analysis for which there is substantial evidence. Veal, 585 So.2d at 697. We are obligated to defer to that analysis.
¶ 13. This Court finds these matters to be without merit.
II. Sentencing Issues
¶ 14. Because the appellant raises questions as to the sentencing in both 01-149 and 01-150 in issues VII, XI, XII, XIII, and XIV, and because these issues are closely related, we shall examine them together. After Cannon was found guilty of possession with intent to distribute, at his first trial, 01-149, he was sentenced by Lincoln County Circuit Court Judge Mike Smith to serve thirty years and pay a fine of one million dollars pursuant to Mississippi Code Annotated § 41-29-139(b)(l). Prior to his second trial, 01-150, the State filed a motion to amend the indictment pursuant to Rule 7.09 of the Uniform Rules of Circuit and County Court Practice (URCCCP), to assert that Cannon was an habituaL criminal due to his prior , convictions in both Texas and Mississippi. After the trial, Cannon was sentenced to thirty years for each of the two counts of his conviction, with the sentences to run consecutively, as well as a one million dollar fine, pursuant to the same statute. The trial judge imposed the maximum sentence in the second trial as mandated under Mississippi Code Annotated § 99-19-81, which states that if a person has been convicted twice previously of a felony, that person “shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.” The trial judge then doubled the maximum sentence and fine, for a total of 120 years and a two million dollar fine, pursuant to Mississippi Code Annotated § 41-29-147, otherwise referred to as the “sentence-doubling provision.” Thus, for both convictions, Cannon was sentenced to serve a total of 150 years in prison and pay a total of three million dollars in fines.
STANDARD OF REVIEW
¶ 15. Generally sentencing “is within the discretion of the trial court, and this Court will not review the sentence, if it is within the limits prescribed by statute.” Berry v. State, 722 So.2d 706, 707 (Miss.1998) (quoting Reynolds v. State, 585 So.2d 753, 756 (Miss.1991)). A sentence will not be disturbed on appeal as long as it does not exceed the maximum term allowed by statute. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992). The trial court is not limited to the consideration of evidence presented of record at trial when imposing sentence. Jackson v. State, 551 So.2d 132, 149 (Miss.1989).
¶ 16. Cannon claims that the trial court judge, in Cause No. 01-150, commit *742 ted reversible error in allowing Ms indictment to be amended to charge him as an habitual offender. Cannon claims that the enhanced portion must be found in the original indictment. Cannon also recognizes that our Court has repeatedly upheld amendments pursuant to URCCC 7.09, but urges us to overrule our precedent and hold that such charges should be made only by a grand jury.
¶ 17. The supreme court has held that amendments to charge habitual status are not viewed as a matter affecting the substance of the offense and are allowed under URCCC Rule 7.09. Burrell v. State, 726 So.2d 160(¶ 4) (Miss.1998). Accordingly, this Court has followed that precedent and found that such amendments affect only sentencing and not the substance of the underlying offense. Williams v. State, 766 So.2d 815, 817(¶ 5) (Miss.Ct.App.2000), Anderson v. State, 766 So.2d 183, 135 (¶¶ 4-5) (Miss.Ct.App.2000). We refuse to stray from such holdings and thus find this issue without merit.
¶ 18. Cannon also claims that the trial judge based his sentence in the second trial on extrajudicial information about which Cannon had no prior notice nor opportunity to defend. He bases his assertion upon a statement made by Lincoln County Circuit Court Judge Mike Smith during Cannon’s sentencing hearing. The statement reads:
You fit in a category of a convict that cannot be rehabilitated. There is not anything I can do, not any sentence I can give you, that would change your attitude towards obeying the law. It’s well known in the community about the young ladies that you seem to lure out to your residence ... because of the seriousness of the drug situation in this district and at least 85 percent of every criminal case that comes through this Court is convicted with drugs in some shape, form or fasMon.
¶ 19. The State asserts in its brief that the trial judge ordered a pre-sentence report. That report initially was not included in the record before this Court. However, this Court ordered that the record be supplemented to include all documents considered in passing sentence. That information is now before this Court. In the sentencing for the first case, Judge Smith used a similar comment alluded to by the Appellants in their brief in that “[ejighty-five percent of all crimes in this district is connected to dope.” The trial judge was intimately acquainted with the nature and types of cases filed in that circuit court district. That intimate acquaintance would allow him to draw conclusions as to the relationship between crime and drugs in that district. The conclusions drawn from that intimate acquaintance were a proper consideration in determining a sentence for Cannon. Nichols v. State, 826 So.2d 1288(¶ 10) (Miss.2002); Jackson, 551 So.2d at 149.
¶ 20. Additionally, there is no mention in the record of 01-150 that Cannon necessarily “lured” young ladies out to his residence. Cannon was an habitual offender, and the trial judge did not impose a sentence outside the parameters of § 99-19-81, which requires a maximum sentence for habitual offenders. Because a trial judge may consider societal concerns during sentencing, and because thé judge did not exceed the maximum penalties under the statute, this Court finds no error by the trial judge in sentencing Cannon to thirty years for each count.
¶ 21. During sentencing, the trial court stated that Cannon “lured” young ladies out to his residence. This Court is very concerned by the trial court’s remark since it is not supported by the record. However, that remark appears to be harmless *743 error, since the sentence was within the statutory limits. Nichols, 826 So.2d' at (¶ 10).
¶ 22. Cannon further asserts that the trial judge failed to make findings regarding his life expectancy before sentencing him. Cannon admits that his counsel failed to object to the sentence in the first trial, but states that the trial judge overruled Cannon’s objection in the second trial, stating “[e]very now and then, we see somebody ... that exceeds 100 years and 120 years. He just has to do the best he can.”
¶23. Our Court has addressed the trial court’s need to examine life expectancy during sentencing. In Handford v. State, 736 So.2d 1069, 1071(¶8) (Miss.Ct. App.1999), this Court stated that “the trial court will make a record of and consider all relevant facts necessary to fix a sentence for a definite term [of years] reasonably expected to be less than life. The court should consider the age and life expectancy of the defendant and any other pertinent facts which would aid in fixing a proper sentence.”(quoting Stewart v. State, 372 So.2d 257, 259 (Miss.1979)). However, in cases where the defendant has been convicted of multiple offenses, the requirement for a consideration of life expectancy “should not be taken to suggest that (1) he may not be subjected to full and appropriate punishment or (2) that his sentences may not be run consecutively.” Mooneyham v. State, 842 So.2d 579, 589(¶ 34) (Miss.Ct.App.2002) (citing Robert v. State, 756 So.2d 806(¶ 14) (Miss.Ct.App.1999)).
¶ 24. In Mooneyham, the appellant was not given the maximum penalty allowable, nor was he given a life sentence. Id. We held that since sentencing “is purely a matter of trial court discretion so long as the sentence imposed lies within the statutory limits,” there was no merit to the issue that Mooneyham’s sentence amounted to cruel and unusual punishment. Id. at (¶ 35).
¶25. In this case, however, there is evidence that the trial judge in 01-150 knew that Cannon was forty-five years old, and it was stated by his counsel during the sentencing hearing that the presentence report showed Cannon suffered from Hfep-atitis A, B, and C. Judge Smith was the same judge who sentenced Cannon to thirty years in prison in 01-149.
¶ 26. Under Mississippi Code Annotated § 41-29-147, a trial judge may impose a sentence “up to twice the term otherwise authorized, fine an amount up to twice that otherwise authorized, or both.” This doubling statute is authorized for habitual drug offenders, but is not a mandatory sentence. In this case, the trial judge not only imposed the maximum sentence as required by statute, but also doubled the sentence and fines under § 41-29-147. It is obvious that the judge did not consider Cannon’s age when he imposed the sentence. It is-further evident that he did not take Cannon’s life expectancy into consideration when he doubled the sentence as per § 41-29-147. Cannon was incarcerated at the time of the sentencing of 01-150, and had been sentenced to serve a term of thirty years. Cannon’s medical history was not proffered, nor was the sentence objected to by his counsel. Thus, the sentence in 01-149 of thirty years was proper. However, the discretionary imposition of consecutive terms of sixty years for the two counts of 01-150, without appropriate on the record findings, is excessive. Thus the case should be remanded for resen-tencing taking into account Cannon’s life expectancy and placing on the record any specific findings, which would serve as the basis for such a lengthy sentence.
¶ 27. The State asserts that our ruling in Handford is misplaced. The State as *744 serts that Stewart addressed an issue arising from an interpretation of the armed robbery statute and its sentencing provisions. Upon review of Stewart, we find that the 10-0 holding of Handfórd was correctly applied. We also find that ruling applicable in this case.
¶ 28. The final issue raised concerning sentencing involves a clerical error in the sentencing order of 01-149. On October 15, 2001, the State filed a motion to amend the original indictment which charged Cannon with “Unlawful Possession of at Least Ten (10) Grams but Less Than Thirty (30.0) Grams of Methamphetamine With Intent to Distribute” to “Unlawful Possession of at Least 2.0 Grams but Less Than 10.0 Grams of Methamphetamine With Intent to Distribute.” The motion was granted the same day. The jury received the amended version and found Cannon guilty of the charge. However, in the sentencing order, the sentence had not been changed from the original indictment. This is simply a clerical error, and therefore the trial court is ordered to correct the error upon resentencing.

Forfeiture

¶ 29. Bill Cannon and his mother, Dott Cannon, acting as trustee for the William Erin Cannon Trust, allege the trial court erred in ordering the forfeiture of 62.08 acres of real property, a motorcycle, and $2,000 cash. The Cannons base their allegation on a number of errors, including (a) the forfeiture petition failed to state a cause of action for forfeiture of the real property; (b) failure to serve all necessary parties; © error by the trial judge in concluding that the appellants could not relitigate the suppression issues, including the admissibility of the search warrants and the legality of the arrests made in the two drug arrests; (d) the admissibility of the confession by Cannon that he had used the motorcycle to purchase drugs; (e) the evidence was insufficient to support the forfeiture of the property; and (f) the forfeiture of land was not proportionate to Cannon’s drug use.
A. Failure to state a cause of action
¶ 30. Cannon claims the petition for forfeiture fails to state a cause for forfeiture. Cannon asserts that the petition states no reason for the forfeiture of the real property, nor does it state any specific dates on which any forfeitable incidents occurred on the property. Cannon further asserts that the only allegation stated on the petition regarding the land is that the land is owned by F.H. Cannon, Jr. (deceased) and Dott Cannon, Trustees of the William Erin Cannon Trust. •
¶ 31. The supreme court has expressed its concerns when dealing with forfeitures. “Forfeitures are not favored in this state; therefore, before a forfeiture may be ordered, it must come within the terms of the statute which imposes the liability of forfeiture.” Jackson v. State ex rel. Mississippi Bureau of Narcotics, 591 So.2d 820, 823 (Miss.1991). “A concern of this Court has been that forfeiture statutes had the capacity ‘not only [of reaching] the property of criminals, but also ... that of innocent owners who did all they reasonably could to prevent the misuse of their property.’ ” Parcel Real Property v. City of Jackson, 664 So.2d 194, 198 (Miss.1995) (quoting Curtis v. State, 642 So.2d 381, 385 (Miss.1994)).
¶ 32. After careful review of the record, it is evident that although the petition, in the caption, well describes the real property, along with other property the State alleges is subject to forfeiture, the real property is not mentioned in the petition itself. The State describes the motorcycle and the $2,000 cash, and states the reasons and particular authority for the forfeiture of those items. However, the petition fails *745 to mention the most important subject of the forfeiture, the real property. The Cannons raised this issue as an affirmative defense in their answer to the petition, and again asserted this procedural issue in their closing brief to the trial court.
¶ 33. The State asserts that the pleading is sufficient under Rule 8 of the Mississippi Rules of Civil Procedure. The rule provides that a complaint must contain “(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and, (2) a demand for judgment for the relief to which he deems himself entitled.” M.R.C.P. 8(a). Although the State asserts that the comment to Rule 8 states that “[t]he purpose of Rule 8 is to give notice, not to state facts and narrow the issues as was the purpose of pleadings in prior Mississippi practice,” further reading of that same comment states “[although Rule 8 abolishes many technical requirements of pleadings, it does, not eliminate the necessity of stating circumstances, occurrences, and events which support the proffered claim.” M.R.C.P. 8 cmt.
¶ 34. The State’s complaint with regards to the real property did not meet the requirements of the Rules of Civil Procedure. While the Cannons essentially raised this as an affirmative defense, they did not seek a prior ruling on the matter, and proceeded to trial. At the conclusion of its case-in-chief, the State made an oral motion to conform the pleadings to the proof. That proof included the description of the real property on which forfeiture was sought, and the reasons for the same. When the trial court inquired whether the Cannons objected to the motion to amend, their attorney responded, “No objection.” After which, the trial court approved the amendment. It is that amendment, which allowed the State’s complaint to meet the threshold pleading requirements of our Rules of Civil Procedure.

B. Failure to serve all parties

¶ 35. The Cannons claim that this Court should reverse the forfeiture because Bill Cannon’s daughters, Carla Wallace and Kristin Cannon, were not served with service of process and were thus not made parties to the suit. We find this issue to be proeedurally barred because the Cannons failed to include insufficiency of process in their answer to the forfeiture petition as required under Mississippi Rules of Civil Procedure 12(h)(1), which holds that “[a] defense of ... insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion ... or (B) if it is neither made by a motion under this rule nor included in a responsive pleading.”
¶ 36. Moreover, we agree with the trial court that Cannon’s daughters were not owners of the property as per the trust agreement. Under the trust agreement, the trust would terminate after both daughters had become fully emancipated. According to the record, Kristin Cannon was nineteen at the time of the forfeiture hearing, and was planning to continue her college education. Thus, though both Carla and Kristin are intended beneficiaries, they did not have a vested interest in the trust as to require notice of the forfeiture hearing. The requisite. parties, Bill Cannon, the de facto owner, and Dott Cannon, the surviving trustees were properly served with process. Therefore, this issue is without merit. Young v. Huron Smith Oil Co., Inc., 564 So.2d 36, 38, 39 (Miss.1990).

C. Relitigation of suppression issues/ D. Confession of motorcycle use

¶ 37. The trial judge had previously conducted a hearing on the suppression of evidence as a part of the criminal proceeding. He was not required to conduct a new suppression hearing on this same evidence as a part of the forfeiture *746 proceeding. It was within the authority of the trial judge to take notice of the. testimony from the suppression hearing, and his prior ruling as to its admissibility. Gulley v. State, 870 So.2d 652(¶ 8) (Miss.2004); Townsend v. State, 847 So.2d 825 (¶¶ 24, 25) (Miss.2003); Baldwin v. State, 732 So.2d 236(¶ 35) (Miss.1999). Cannon has not indicated the existence of additional evidence, which he was not allowed to offer. In the absence of such indication, and of a proffer of the evidence, this Court finds this issue lacks merit. Baldwin, 732 So.2d at (¶ 35); Smith v. State, 737 So.2d 377 (¶¶ 12,13) (Miss.Ct.App.1998).

E. Insufficiency of evidence

¶ 38. The trial judge sat as trier of fact in the forfeiture case. It was within his right to decide matters of credibility and weight. He decided those issues against Cannon. Where those matters are supported by substantial evidence, this Court is obligated to affirm even where as fact finder, it might have done otherwise. One Hundred Seven Thousand Dollars ($107,000.00) U.S. Currency (Tagle) v. State ex rel. Harrison County Sheriffs Dept. By and Through Gulf Coast Multijurisdictional Task Force, 643 So.2d 917, 920 (Miss.1994).

F. Proportionality

¶ 39. The trial court found that Cannon was a career drug dealer with a substantial operation. It also found that the various items for forfeiture were used in furtherance of Cannon’s sales of illegal drugs, or were the fruit of illegal drug sales. Cannon has not shown that such a finding is unsupported by the record. Where that finding is supported by the record, we cannot reverse. Pulphus v. State, 782 So.2d 1220(¶ 15) (Miss.2001).
■¶ 40. Procedural bar notwithstanding, when we consider all of the evidence in the light most favorable to the verdict and give the State the benefit of all reasonable inferences that can be drawn from the evidence we do not find that the evidence points so overwhelmingly in favor of [Cannon] that reasonable jurors could not have arrived at a guilty verdict. Adams v. State, 851 So.2d 366, 371(¶ 8) (Miss.Ct.App.2002).
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF TWO COUNTS OF POSSESSION OF METHAMPHETAMINE WITH INTENT TO DISTRIBUTE AND FINE OF $1,000,000 ON EACH COUNT IS AFFIRMED, BUT IS REVERSED AND REMANDED FOR RESENTENCING CONSISTENT WITH THIS OPINION.
¶ 42. THE JUDGMENT OF CONVICTION OF POSSESSION OF TWO GRAMS BUT LESS THAN TEN GRAMS OF METHAMPHETAMINE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1,000,000 IS AFFIRMED.
¶ 43. THE JUDGMENT OF FORFEITURES OF 62.08 ACRES OF LAND, A 1997 BLACK HONDA SHADOW MOTORCYCLE AND $2,000 IN UNITED STATES CURRENCY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING, MYERS, CHANDLER AND ISHEE, JJ., JOIN THIS OPINION. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND LEE, P.JJ., AND BARNES, J.